IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| JEFFREY L. MILLER, | ) | |
| | ) | CASE NO. BK03-82793 |
| Debtor(s). | ) | A04-8026 |
| JEFFREY L. MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | CH. 11 |
| | ) | |
| vs. | ) | |
| | ) | |
| MIDSTATES BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Trial was held in Omaha, Nebraska, on March 16, 2006, on the plaintiff's adversary complaint. D.C. Bradford and Ryan Dougherty appeared for the debtor-plaintiff, and Lyle Ditmars and John Kwapnioski appeared for the defendant. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A) and (O).

The debtor, through a solely owned corporation, borrowed $400,000 from MidStates Bank in April 2002 to purchase a 2000 Piper Saratoga TC airplane for business use. The purchase price of the plane was $380,000. The debtor, through the corporation, granted a security interest in the plane to the bank, which was recorded with the FAA. The debtor also gave the bank a second-position deed of trust on a residential property in Omaha as additional security, along with a personal guaranty. By July 2003, the debt was in default and the bank began collection procedures. On July 25, 2003, the bank repossessed the airplane. It advertised and subsequently sold the airplane "as-is" in September 2003 for $305,000. The debtor had filed a Chapter 11 bankruptcy case by that time, and thereafter filed this adversary proceeding against the bank asserting that the bank's disposition of the airplane was not done in a commercially reasonable manner. Specifically, the debtor argues that any deficiency claimed by the bank should not be enforced against him because it is a result of the bank's faulty sale procedures.

At trial, the bank presented live and deposition testimony from several witnesses regarding the value of the plane and the reasonableness of the bank's efforts to sell it. The debtor offered no testimony in support of his position, but did offer documentary evidence.

The plane at issue was purchased new in 2000 by a California buyer for $492,710, which

included nearly $50,000 of options and upgrades. That buyer sold it to a dealer in the spring of 2002, who immediately resold it to the debtor for $380,000. This make and model of airplane was known to have a problem with faulty crankshafts, so this plane was grounded until the engine could be inspected and the crankshaft replaced. That was done in July 2002 and the aircraft was deemed airworthy and returned to service.

At the time the bank repossessed the plane and undertook efforts to sell it, the federally required log books which serve as a maintenance and airworthiness record for the airplane, and separately for the engine, were missing. The evidence presented at trial is consistent that the missing log books materially affected the value of the airplane to prospective purchasers. The bank's aircraft consultant, the dealer who sold the plane to the debtor, and the purchaser of the plane from the bank all testified that the lack of original log books was a cause of concern, as it creates a question in the minds of prospective buyers as to what sort of maintenance the plane has received and whether it has been kept up to appropriate standards. One witness testified, and another concurred, that an airplane without its original logs is akin to a motor vehicle with a salvage title. Such concerns reduce the number of prospective buyers willing to take the risk of bidding on the item. The dealer who sold the plane to the debtor estimated that the lack of log books would reduce the selling price by anywhere from ten to thirty percent. The difference between the $380,000 paid by the debtor and the $305,000 received by the bank is almost exactly twenty percent.

In addition, the man who purchased the plane from the bank testified that he researched the market for similar planes and found the price range to generally be between $340,000 or $350,000 and $380,000 or $390,000. Because of the lack of log books and resulting questions about the plane's maintenance history, as well as a sales tax issue, he decided to offer approximately $300,000 for the plane, which was the highest bid received. After negotiation, he paid $305,000 for it.

The debtor has challenged the bank's manner of sale, arguing that the bank did not properly advertise the plane. The evidence indicates that the bank advertised the plane in a national aviation publication commonly used by pilots and aircraft owners. The ad evidently ran for four weeks, from early September through early October. It appears that few, if any, inquiries were generated by that ad. Bank officials also used word-of-mouth advertising to stimulate interest in the plane. The evidence reflects that only two bids were made, both by local people.

The bank is organized in and located in Iowa and conducted the business at issue here from an Iowa office. Therefore, the matter is governed by Iowa law. The commercial reasonableness of a sale is a question of fact, on which the secured party bears the burden of proof. Knierim v. First State Bank, 488 N.W.2d 454, 457 (Iowa Ct. App. 1992).

The Iowa Supreme Court has stated:

> While discrepancy in price may be an important consideration in resolving questions of commercial reasonableness, we adopt the views expressed in In re Zsa Zsa Limited, 352 F. Supp. 665, 670 (S.D.N.Y. 1972) and Westgate State Bank v. Clark,

>   231 Kan. 81, 89, 642 P.2d 961, 969 (1982) that:
>> It is the aggregate of circumstances in each case – rather than specific details of the sale taken in isolation – that should be emphasized in a review of the sale. The facets of manner, method, time, place and term cited by the Code are to be viewed as necessary and interrelated parts of the whole transaction.

Monahan Loan Serv., Inc. v. Janssen, 349 N.W.2d 752, 757 (Iowa 1984).

The "totality of the circumstances" approach to commercial reasonableness has been codified at Iowa Code Ann. § 554.9627:

> 554.9627. Determination of whether conduct was commercially reasonable
>
> 1. Greater amount obtainable under other circumstances – no preclusion of commercial reasonableness. The fact that a greater amount could have been obtained by a collection, enforcement, disposition, or acceptance at a different time or in a different method from that selected by the secured party is not of itself sufficient to preclude the secured party from establishing that the collection, enforcement, disposition, or acceptance was made in a commercially reasonable manner.
>
> 2. Dispositions that are commercially reasonable. A disposition of collateral is made in a commercially reasonable manner if the disposition is made:
>> a. in the usual manner on any recognized market;
>> b. at the price current in any recognized market at the time of the disposition; or
>> c. otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.
>
> 3. Approval by court or on behalf of creditors. A collection, enforcement, disposition, or acceptance is commercially reasonable if it has been approved:
>> a. in a judicial proceeding;
>> b. by a bona fide creditors' committee;
>> c. by a representative of creditors; or
>> d. by an assignee for the benefit of creditors.
>
> 4. Approval under subsection 3 not necessary – absence of approval has no effect. Approval under subsection 3 need not be obtained, and lack of approval does not mean that the collection, enforcement, disposition, or acceptance is not commercially reasonable.

See also Geiger v. Tokheim, 191 B.R. 781 (N.D. Iowa 1996) (discussing commercial reasonableness under predecessor statute).

      The bank advertised the aircraft in an aviation industry publication. The purchaser researched the market value of the plane and adjusted his idea of the plane's worth based on the circumstances of the sale. Trial witnesses experienced in aircraft purchase transactions agree that the plane, sold as-is under circumstances beyond the control of the bank, was worth less than a comparable plane sold with original log books. For all of these reasons, I find that the sale was commercially reasonable.

      It should be noted that approximately two months after the bank sold the airplane, with recreated log books because the debtor was unable or unwilling to provide the originals to the bank, the purchaser visited the debtor's office or former office and obtained the original log books. There has been no evidence that the debtor did not have the log books after the bank took possession of the plane and repeatedly requested them from him. It is therefore disingenuous for the debtor to now claim that the bank failed to make every reasonable effort to market the airplane when a significant reason for the discounted sale price of the plane was the missing log books.

      A separate judgment will be entered in favor of the defendant.

DATED:    April 13, 2006

BY THE COURT:

/s/ Timothy J. Mahoney
Chief Judge

Notice given by the Court to:
    *D.C. Bradford
    Ryan Dougherty
    Lyle Ditmars
    John Kwapnioski
    U.S. Trustee

Movant (*) is responsible for giving notice of this order to all other parties not listed above if required by rule or statute.